IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| **Ernest Dwayne Riley,** ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 1:20cv937 (CMH/JFA) |
| ) | |
| **Officer Pensabene, et al.,** ) | |
| Defendants. ) | |

MEMORANDUM OPINION & ORDER

Before the Court is a Motion for Summary Judgment [Dkt. No. 34] filed by Arlington County Police Officer Christopher Pensabene ("defendant," "Pensabene," or "Officer Pensabene") in this civil rights action brought by federal prisoner Ernest Dwayne Riley ("plaintiff"). Plaintiff claims in this action that Officer Pensabene and other law enforcement officers violated his constitutional rights by conducting an unlawful search of cell phones discovered in his car. [Dkt. No. 1]. In the instant Motion, defendant asserts that plaintiff is incorrect, claiming that neither he nor any other Arlington County police officer accessed the contents of his cell phone. [Dkt. No. 35]. Although plaintiff received the warning required by Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), he has not filed a substantive response to the Motion, nor has he requested additional time to do so.[1] Accordingly, the Motion is ripe for adjudication. For the reasons that follow, the Motion will be granted.

---

[1] Following the filing of defendant's Motion, plaintiff filed a raft of submissions seeking various forms of discovery, appointment of counsel, leave to amend his complaint, enlargements of time, and reconsideration of previous decisions. See, e.g., [Dkt. Nos. 36, 39, 40, 41, 43, 46, 50, 52, 54, 57]. The Court denied the vast majority of these motions but on June 15, 2022, permitted plaintiff to issue interrogatories upon defendant. [Dkt. No. 55]. In that Order, the Court made clear that plaintiff would be required to oppose Pensabene's Motion for Summary Judgment within twenty-one days of the date Pensabene responded to his discovery requests. Id. Pensabene sent his responses to plaintiff on July 18, 2022. [Dkt. No. 60]. Accordingly, plaintiff

## I. Undisputed Facts

The following facts are not in dispute except where otherwise described in footnotes.[2]

On July 10, 2019, a three-count indictment against plaintiff was filed in the Norfolk Division of the United States District Court for the Eastern District of Virginia.[3] See United States v. Riley,

---

was required to oppose the Motion for Summary Judgment no later than August 8, 2022. Plaintiff has not done so, nor has he requested additional time in which to do so. Consequently, the Court will proceed to assess the Motion without further delay.

[2] The contents of the statement of undisputed facts derive primarily from docket entries in plaintiff's criminal case and the affidavits submitted in support of the instant Motion. But because plaintiff's complaint was sworn under the penalty of perjury, its allegations also contribute to the factual record to the extent they are not merely conclusory and thus insufficient to create factual disputes. See Bouchat v. Balt. Ravens Football Club, Inc., 346 F.3d 514, 522 (4th Cir. 2003) ("A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [its] pleadings,' but rather must 'set forth *specific facts*'" showing that there is a triable issue."). Although it is unclear whether the Court is required to look to plaintiff's proposed amended complaints that were *not* accepted, it has nevertheless done so in the spirit of the Fourth Circuit's recent decision in Goodman v. Diggs, 986 F.3d 493 (4th Cir. 2021). There, the Fourth Circuit held that "an amended complaint does not divest an earlier verified complaint of its evidentiary value as an affidavit at the summary judgment stage." Goodman, 986 F.3d at 499. Here, even though the Court rejected plaintiff's proposed amended complaints, those documents were sworn and thus may hold evidentiary value. Finally, the Court has looked to the sworn affidavits and documents that have accompanied plaintiff's past filings. In total, the Court has identified the following docket entries as containing admissible evidence submitted by plaintiff that could be considered at summary judgment: [Dkt. Nos. 1; 24-1 through 24-2; 28-1 through 28-2; 36-1; 44; 50; 53].

[3] The indictment charged plaintiff with:

1. Possessing a firearm after sustaining a conviction for a crime punishable by imprisonment for a term exceeding one year, a violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2);

2. Making a false statement during the purchase of a firearm, a violation of 18 U.S.C. §§ 922(a)(6) and 924(a)(2); and

3. Making a false statement in records required to be maintained by a federally licensed firearms dealer, a violation of 18 U.S.C. § 924(a)(1)(A).

United States v. Riley, No. 2-19-cr-124 (E.D. Va.), [Dkt. No. 3].

No. 2:19cr124 (E.D. Va.), [Dkt. No. 3]. That same day, United States Magistrate Judge Krask issued a warrant for plaintiff's arrest. Id. at [Dkt. No. 7].

On July 16, 2019, Pensabene, who is an Arlington County Police Officer, received an email from a detective with the department. [Dkt. No. 35-1] at 1. The email stated that a "white, newer, Range rover had been traveling westbound on Route 50 near North Pierce Street in Arlington County at roughly the same time each morning" and that the vehicle was "bearing Maryland "Ghost Tags" as its license plates." Id. A "Ghost Tag" is a tag that is not listed on the National Crime Information Center ("NCIC"), Virginia Criminal Information Network ("VCIN"), or other states' department of motor vehicles ("DMV") databases. Id. at 1-2.

On the morning of July 17, 2019, in response to the email he received one day prior, Officer Pensabene reported to the vicinity of Route 50 and North Pierce Street. Id. at 2. At some time between roughly 7:45 a.m. and 9:00 a.m.,[4] defendant observed a white Range Rover consistent with the one described in the email he had received. Id. Because the vehicle bore only a rear license plate which was not listed in the NCIC, VCIN, or DMV databases, defendant conducted a traffic stop. Id.

Officer Pensabene explained to plaintiff, who had been driving the Range Rover, that his vehicle "did not appear to be registered." Id. He thus asked for plaintiff's driver's license and registration. Id. Plaintiff produced a Maryland registration card and explained to defendant that his license was in the trunk. Id.

---

[4] Defendant claims to have first observed plaintiff at "approximately 8:51 a.m." [Dkt. No. 35-1] at 2. Plaintiff, meanwhile, alleges he was pulled over at approximately 7:45 a.m. [Dkt. No. 1] at 7. Although the time of the parties' encounter is not material to the outcome of this case, it is nevertheless a contested fact.

3

Defendant inspected the registration card plaintiff had given him and concluded that it was fraudulent. Id. When Officer Pensabene scanned the code on the card, it "returned a name of Raquel Olga Gonzalez of District Heights, Maryland, for a 2017 Dodge Ram with a different [vehicle identification number ("VIN")] than [the one listed] on the Range Rover." Id. When Officer Pensabene searched plaintiff's name on DMV databases, he learned that plaintiff had a suspended driver's license in Virginia, a cancelled license in Washington, D.C., and no license at all in Maryland. Id. Plaintiff told defendant that he had purchased the Range Rover in Ohio, but the car's VIN was not listed in any state's DMV records. Id. at 3. This led defendant to conclude that the original VIN had been removed from the Range Rover and that the vehicle was stolen. Id.

Based on the information he had gathered, Officer Pensabene placed plaintiff under arrest for driving on a suspended license, presenting a fraudulent registration, possessing a fraudulent license plate, displaying a fraudulent license plate, and driving a stolen vehicle. Id. Before taking plaintiff into custody, however, defendant called for an additional unit to assist him. Id. Arlington County Police Officer Douglas Bennet responded to Officer Pensabene's call and witnessed plaintiff's arrest. [Dkt. No. 35-2] at 1.

After arresting plaintiff, Officer Pensabene searched the Range Rover, believing that it was likely the vehicle housed evidence relevant to plaintiff's criminal behavior. [Dkt. No. 35-1] at 3. Pensabene recovered a loaded 9-millimeter, semi-automatic pistol, a THC cartridge, two unused medical needles, medical gloves, a hand-written schedule, a prescription bottle containing oxycodone pills, and several suitcases and bags. Id. at 4. As particularly relevant to

this action, Pensabene also recovered two cell phones—a black iPhone and a black Motorola. Id. Neither phone was accessible by Pensabene, as each was locked and required a passcode.[5] Id.

The Range Rover plaintiff had been driving was then towed to the Arlington County Police Department's impound lot. Id. Meanwhile, Officer Pensabene turned over the items he seized incident to plaintiff's arrest—including plaintiff's two cell phones—to the police department's Evidence and Inventory Management Unit. Id. Pensabene then took plaintiff before a magistrate, who found probable cause for eight separate violations of Virginia law. Id.

After discovering that plaintiff was being investigated by the Bureau of Alcohol, Tobacco, and Firearms ("ATF"), Officer Pensabene contacted Special Agent Chung of that body. Id. Chung informed Pensabene that a sealed warrant had issued in federal court for plaintiff's arrest. Id. Pursuant to the federal arrest warrant, plaintiff was transferred from the Arlington County Detention Facility into the custody of ATF agents. Id. at 5. Special Agent Chung later took custody of the cell phones found in the Range Rover on July 17, 2019. Id. Eventually, ATF agents obtained and executed two warrants to search those phones. Id. The black iPhone was accessible, but only through the use of forensic decryption software. [Dkt. No. 35-4] at 2. The black Motorola phone was not able to be accessed by ATF agents. Id. To date, the cell phones have not been returned to the custody of the Arlington County Police. [Dkt. No. 35-3] at 2. To aid Arlington County Police's investigation of plaintiff, on August 26, 2019, Detective Thomas Hanula sent a letter to ATF requesting copies of the information secured from plaintiff's cell phones. See [Dkt. No. 35-1].

---

[5] Plaintiff has repeatedly charged Pensabene with having accessed the contents of these cell phones without a warrant. See, e.g., [Dkt. Nos 1; 24-1]. As explained below, plaintiff's claims regarding Pensabene's alleged actions are purely conclusory and do not withstand scrutiny. Consequently, the Court does not accept as true plaintiff's claims that Pensabene accessed the contents of the cell phones in question.

Citing the specialized methods required to access plaintiff's cell phones, ATF Agent Ivone attests that Pensabene could not have accessed the phones or their contents. [Dkt. No. 35-4] at 2. Officer Pensabene attests that he did not participate in plaintiff's criminal prosecution and did not provide any information to the United States Attorney's Office. [Dkt. No. 35-1] at 5.

## II. Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party," and "[a] fact is material if it might affect the outcome of the suit under the governing law." Variety Stores v. Wal-Mart Stores, Inc., 888 F.3d 651, 659 (4th Cir. 2018). Once the moving party has met its burden to show that it is entitled to judgment as a matter of law, the nonmoving party "must show that there is a genuine dispute of material fact for trial … by offering sufficient proof in the form of admissible evidence." Id. (quoting Guessous v. Fairview Prop. Inv'rs., LLC, 828 F.3d 208, 216 (4th Cir. 2016)). A district court evaluating a motion for summary judgment should consider the evidence in the light most favorable to—and draw all reasonable inferences in favor of—the nonmoving party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).

## III. Analysis

The Court begins its analysis of Officer Pensabene's Motion for Summary Judgment by clarifying the scope of the issues plaintiff raises. Although it is clear plaintiff believes Pensabene violated his rights under the Fourth Amendment,[6] he does not challenge the traffic stop or the

---

[6] Plaintiff also claims that Pensabene violated his rights under the Fourteenth Amendment, but there is no indication that plaintiff seeks relief under any specific Fourteenth Amendment doctrine, such as equal protection. Instead, it seems that plaintiff seeks relief through this

6

basis of his arrest. See [Dkt. No. 28-1] at 3 ("Affiant does not challenge the [s]top, or his [a]rrest (sic)."). Nor, in fact, does he seemingly challenge the physical seizure of his cell phones incident to that arrest; in a proposed amended complaint, his claims for relief omit such a theory of recovery.[7] Instead, the basis for plaintiff's claim against Pensabene is Pensabene's supposedly warrantless search of the cell phones and subsequent transmission of digital information to the United States Attorney for the Eastern District of Virginia. See [Dkt. No. 1] at 8-9.

Without question, a warrantless search of the contents of plaintiff's cell phones would constitute a violation of plaintiff's rights under the Fourth Amendment. See Riley v. California, 573 U.S. 373, 401 (2014) ("[A] warrant is generally required before [a search of the information on a cell phone], even when a cell phone is seized incident to arrest."). Unfortunately for plaintiff, the record at summary judgment establishes that Pensabene never accessed—and in fact, *could not have accessed*—the contents of plaintiff's cell phones, given that the phones were

---

amendment solely on the basis of the incorporation doctrine—or because the Fourteenth Amendment made the Fourth Amendment applicable to state action. But "[w]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment ... must be the guide for analyzing" a claim. Albright v. Oliver, 510 U.S. 266, 273 (1994) (plurality opinion) (internal quotation marks omitted). The Court will therefore not discuss the Fourteenth Amendment in this Order.

[7] To the extent plaintiff does challenge the physical seizure of his cell phones, his claim is without merit, for the record supports the legitimacy of that seizure. Indeed, the Supreme Court has articulated a "two-part rule under which an automobile search incident to a recent occupant's arrest is constitutional (1) if the arrestee is within reaching distance of the vehicle during the search, or (2) if the police have reason to believe that the vehicle contains evidence relevant to the crime of arrest." Davis v. United States, 564 U.S. 229, 234-35 (2011) (citing Arizona v. Gant, 556 U.S. 332, 343 (2009)). Here, as stated above, plaintiff does not contest the legitimacy of his arrest, and he cannot reasonably contest that the automobile he was driving was likely to contain evidence relevant to the crimes for which he was arrested—crimes which were related to plaintiff's ownership and legal license to operate the vehicle. Cf. United States v. Edwards, 769 F.3d 509, 515 (7th Cir. 2014) ("Evidence of a vehicle's ownership is *always* relevant to the crime of driving a vehicle without the owner's consent; registration and title documents are evidence of ownership and are often kept in a car. That's enough for a valid vehicle search incident to Edwards's arrest.") (emphasis in original).

locked, encrypted, and accessible only through the use of specialized software. See [Dkt. No. 35-4] at 2 ("The black iPhone Officer Pensabene seized was locked with a passcose and could *only* be searched using forensic decryption software. The black Motorola cellphone was also locked with a passcode *and could not be accessed* . . . . [B]ased on the efforts needed to search the two cell phones, Officer Pensabene *could not have* searched either of Plaintiff's cell phones.") (emphasis added).

Plaintiff has not introduced admissible evidence sufficient to call this conclusion into question. The only "evidence" he has submitted comes in the form of conclusory allegations that, contrary to the body of evidence submitted alongside the Motion for Summary Judgment, Pensabene truly *did* access and seize the information stored on his cell phones. See, e.g. [Dkt. No. 36-1] at 4 ("Defendant … seized these two cell phones allegedly incident to arrest … and accessed the contents of his cell phones."). These allegations—which appear in several forms and locations throughout the record—are unsupported by any specific facts, such as the time, place, or manner in which plaintiff believes Pensabene accessed the contents of his cell phones. For instance, plaintiff fails to even speculate how Pensabene would have overcome the passcodes and encryption that federal agents were able to bypass only by using specialized software.

In short, plaintiff's conclusory and self-serving allegations are insufficient to create a material dispute. See Bordelon v. Bd. of Educ. of the City of Chi., 811 F.3d 984, 989 (7th Cir. 2016) (finding that "[c]onclusory statements, not grounded in specific facts" cannot defeat a motion for summary judgment."); Murray v. City of Sapulpa, 45 F.3d 1417, 1422 (10th Cir. 1995) (noting that, "while an affidavit is certainly an appropriate vehicle to establish a fact for summary judgment purposes, the affidavit must set forth facts, not conclusory statements"); Whyte Monkee Productions, LLC v. Netflix, Inc., ---F. Supp. 3d---, 2022 WL 1251033, at *9

(W.D. Okla. 2022) (finding affidavit insufficient to create factual dispute where document "provide[d] only a conclusory statement that Mr. Sepi's videography work was a separate enterprise for Whyte Monkee Productions and fail[ed] to include any facts indicating how [the nonmovant] came to know of this arrangement, the details of the arrangement, or the purpose of the arrangement").

The record also establishes that Officer Pensabene does not possess plaintiff's cell phones and thus is in no position to satisfy the injunctive relief—return of those cell phones—plaintiff has requested. See [Dkt. No. 35-3] at 2 ("The phones were not and have not been returned [from ATF] to the Arlington County Police Department."). Accordingly, even to the extent material disputes would prevent the entry of judgment in defendant's favor—which they do not—the Motion for Summary Judgment would still be granted with respect to plaintiff's request for injunctive relief. Cf. Orria-Medina v. Metropolitan Bus Authority, 565 F. Supp. 2d 285, 324 n.12 (D.P.R. 2007) (recommending dismissal of claim for injunctive relief where party "[could] not provide the prospective relief sought by the Plaintiffs").

### IV. Remaining Defendant

The Court previously granted plaintiff's Motion for Leave to Amend by allowing a claim against ATF Agent Ivone to proceed. See [Dkt. No. 61]. Pensabene's Motion for Summary Judgment does not establish that Ivone is entitled to judgment, and the claim against Ivone is thus still active; however, plaintiff is hereby placed on notice that if the Court does not receive within the next fourteen (14) days any address at which to effect service upon ATF Agent Ivone, the claim against Ivone will be dismissed without prejudice. Such a dismissal would be consistent with the requirements of Fed. R. Civ. P. 4(m), which calls for dismissal of claims against defendants who are not served within ninety days of the filing of a complaint. Here, the

proposed amended complaint naming Ivone was filed on May 16, 2022, see [Dkt. No. 50], which, as of this date, was more than one hundred days ago.

## V. Conclusion and Order

For the reasons stated above, Officer Pensabene's Motion for Summary Judgment [Dkt. No. 34] is GRANTED, and it is hereby

ORDERED that judgment enter in favor of defendant Officer Pensabene; and it is further

ORDERED that, within fourteen (14) days, plaintiff submit an address at which ATF Agent Nicholas Ivone may be served. Plaintiff's failure to do so will result in the dismissal—pursuant to Fed. R. Civ. P. 4(m)—of his claims against Ivone.

The Clerk is directed to send a copy of this Order to plaintiff, pro se, and to counsel of record for defendant Pensabene. The Clerk is additionally directed to enter Rule 58 judgment in Pensabene's favor.[8]

Entered this 29th day of August 2022.

Alexandria, Virginia

Claude M. Hilton
USDJ

---

[8] This Order enters judgment in favor of "fewer than all" of the defendants, see Fed. R. Civ. P. 54(b), and is therefore not a final, appealable order. See Excel Industries, Inc. v. Eastern Express, Inc., No. 95-1948, 1997 WL 1100326 (4th Cir. Nov. 5, 1997) ("[P]ursuant to Rule 54(b) of the Federal Rules of Civil Procedure, an order granting summary judgment to fewer than all defendants is unappealable unless the district court makes an express determination that there is no just reason for delay and ... an express direction for the entry of judgment.").